IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LACEY STRADFORD, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No.   16-2064 |
| | : | |
| JOHN WETZEL | : | |
| *SECRETARY PENNSYLVANIA* | : | |
| *DEPARTMENT OF CORRECTIONS* | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                    **March 31, 2017**

Plaintiffs Lacey Stradford, William Nettles, Jesse Stroud, and William Scott—on their own behalf and on behalf of a class of others similarly situated—bring this class action against John Wetzel, Secretary of Pennsylvania Department of Corrections (DOC), asserting violations of their equal protection rights arising out the DOC's policy prohibiting convicted sex offenders from entering halfway houses until two years before their maximum sentence date. Defendant moves to dismiss the action for improper venue and for failure to state a claim upon which relief can be granted.[1] Because the Court finds venue is proper in this District, Defendant's motion to dismiss this case for improper venue or alternatively have the case transferred will be denied. However, the Court finds Plaintiffs have failed to state an Equal Protection Clause violation, and will therefore grant Defendant's motion to dismiss for failure to state a claim.

---

[1] Alternatively, Defendant moves to transfer the case to the Middle District of Pennsylvania.

## BACKGROUND[2]

Plaintiffs are convicted sex offenders who have been granted parole but nonetheless remain incarcerated[3] because of a DOC policy denying eligibility for halfway house placement to paroled sex offenders until they are two years from their maximum sentence date, while other parolees are generally eligible for halfway house placement immediately upon being granted parole.

Plaintiff Scott is currently incarcerated in the Eastern District of Pennsylvania, at the State Correctional Institution (SCI) Graterford. The remaining three Plaintiffs are currently, or have been, incarcerated in the Middle District of Pennsylvania—specifically, Plaintiff Stradford was incarcerated at SCI Hunlock Creek; Plaintiff Nettles is currently incarcerated at SCI Smithfield; and Plaintiff Stroud is currently incarcerated at SCI Benner Township.

Typically, incarcerated individuals in Pennsylvania are statutorily eligible for parole consideration after the expiration of their minimum term of imprisonment. In considering whether to grant parole, the Pennsylvania Board of Probation and Parole (PBPP) conducts an investigation, evaluating the inmate's offense, criminal record, character and background, conduct in prison, and participation in treatment, as well as any recommendations of DOC staff, the assigned prosecutor, or the presiding judge.

---

[2] Except where otherwise specifically noted, the following facts are drawn from Plaintiffs' Complaint, the allegations of which the Court accepts as true for purposes of deciding the instant motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding a court considering a Rule 12(b)(6) motion to dismiss should "assume the[] veracity" of the complaint's "well-pleaded factual allegations"); *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (holding a court evaluating a motion to dismiss for improper venue "accept[s] as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits").

[3] At the time this action commenced, all Plaintiffs were incarcerated. At oral argument, the parties informed the Court that Stradford has since been released from custody.

Sex offenders must satisfy additional requirements before being granted parole. First, sex offenders must complete DOC counseling and a therapy treatment program. Additionally, PBPP may require an evaluation from the Pennsylvania Sex Offenders Assessment Board—comprised of psychiatrists, psychologists, and criminal justice experts—before granting parole to a convicted sex offender.

A parolee, before being released, must first secure approved housing. The DOC operates halfway houses known as Community Correction Centers (CCC) and Community Contract Facilities (CCF), which predominantly house parolees as they transition from prison into the community. Because of the difficulties in securing housing while incarcerated, or as an express condition of parole, many parolees live at a CCC or CCF immediately upon release from prison. While living at these halfway houses, parolees are assisted in finding an approved home plan and employment, and the residents have access to outpatient treatment services, including sex offender treatment.

Unlike other parolees, who typically are able to move to a CCC or CCF upon being granted parole, convicted sex offenders are barred CCC/CCF placement, even if they have already been granted parole, until two years before their maximum sentence expiration date.

Plaintiffs have been granted parole, but have been unable to secure approved housing. Because they are classified as sex offenders, Plaintiffs are not eligible for CCC/CCF placement until two years before their maximum sentence date. Accordingly, Plaintiffs will remain incarcerated, despite being approved for parole, until they are eligible for CCC/CCF placement. As a result, Plaintiffs have been in prison years after being granted parole.

Wetzel, the Secretary of the Pennsylvania DOC, is responsible for implementing the DOC's policies and practices, including the policy at issue here.

**DISCUSSION**

**A. Venue and Transfer**

Although Defendant moves for dismissal for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406, he conceded at oral argument that venue in this District is proper. In any event, the Court notes that venue in this case is indeed proper. Under the federal venue statute, 28 U.S.C. § 1391, a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Although the policy in question here was developed in the Middle District of Pennsylvania, it has been carried out in this District, affecting inmates, including Scott, incarcerated in this District. Venue is therefore proper. *See, e.g.*, *Chimenti v. Pennsylvania Dep't of Corr.*, No. 15-3333, 2016 WL 1125580, at *10 (E.D. Pa. Mar. 21, 2016) (finding venue proper where policy of denying Hepatitis C treatment to prisoners was developed in M.D. Pa. and carried out in E.D. Pa.). Defendant's motion to dismiss this case for improper venue will be denied.

Defendant asks this Court to transfer this case to the Middle District of Pennsylvania, where Defendant resides and where the policy was formulated. Because venue is proper in this district and would also be proper in the Middle District of Pennsylvania,[4] the decision to transfer this case is governed by the federal change of venue statute, 28 U.S.C. § 1404. Under § 1404, a district court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). In addition to those factors listed in § 1404, the Third Circuit has identified a number of private and public interest factors a court should consider in determining whether transfer is

---

[4] Under § 1391(b)(1), venue in a civil action is also proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

warranted. *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879 (3d Cir. 1995). The private interest factors include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id*. (citations omitted).  The public interest factors include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879–80 (citations omitted). Defendant bears the burden of establishing the transfer is warranted under § 1404(a). *See id*. at 879; *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973).

As to the first factor, Plaintiffs' forum preference—which is entitled to "paramount consideration," *see Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), and "should not be lightly disturbed," *Jumara*, 55 F.3d at 879—is this Court. Defendant's preference, on the other hand, is the Middle District of Pennsylvania. The claim arises out of both the Middle and the Eastern Districts, as the policy at issue was formulated in the Middle District and affected three of the four Plaintiffs there; nevertheless, one Plaintiff was affected by the policy in this District. The remaining factors are largely neutral.[5] Because the factors do not weigh in favor of

---

[5] As to the private factors, the convenience of the parties is neutral, relative to their physical and financial condition; the convenience of the witnesses is neutral, as the witnesses would be similarly available in either forum; and the location of books and records is also neutral, as the files could similarly be produced in either forum. As to the public factors, any judgment in this Court should be equally enforceable in the Middle District; there are no known practical considerations that would make a trial in this District any less easy, expeditious, or inexpensive

transferring this case to the Middle District of Pennsylvania, the Court declines to disturb Plaintiffs' choice of forum and accordingly will deny Defendant's motion to transfer.

### B. Failure to State a Claim

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging equal protection violations. Defendant asserts Plaintiffs have failed to allege an equal protection violation, and the case should thus be dismissed. Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Equal Protection Clause does not require "that all persons be treated alike but, rather, . . . that all persons *similarly*

---

than a trial in the Middle District; and there would be no less administrative difficulty by holding trial in either district. Because Plaintiffs are incarcerated in both districts, there is a local interest in both the Eastern and Middle Districts for deciding this case. Because Defendant requests an intra-state transfer, both districts are equally familiar with the applicable state law and there are no applicable differences in public policy. Additionally, this is not a diversity case, and the sixth public interest factor thus does not apply.

*situated* should be treated alike." *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Courts apply various levels of scrutiny, depending on the nature of the classification, to ensure the law or policy complies with the Equal Protection Clause. *Id.* For example, classifications involving a "suspect or quasi-suspect class, or impacting certain fundamental constitutional rights, are subject to heightened scrutiny." *Id.* The Supreme Court has identified those classifications entitled to heightened equal protection scrutiny: race, alienage and national origin, gender, and status as a non-marital child. *Cleburne*, 473 U.S. at 439-40. Other classifications, on the other hand, need only satisfy a rational basis test; that is, the classification is "rationally related to a legitimate goal." *Id.* (citing *Chapman v. United States*, 500 U.S. 453, 465 (1991)).

Classifications based on the nature of a criminal offense are subject to the rational basis test. *See id.* Moreover, a classification based on an individual's status as a sex offender is not a suspect or quasi-suspect class and does not implicate a fundamental right warranting heightened scrutiny. *See id.* (applying rational basis test to classification of "repetitive and compulsive sex offenders"); *Dantzler v. Tennis*, No. 08-1612, 2008 WL 4274486, at *2 (E.D. Pa. Sept. 17, 2008) ("The Equal Protection Clause . . . affords no heightened scrutiny of a state's treatment of sex offenders."). Thus, if Defendants offer "some plausible reason—a 'rational basis'—for treating convicted sex offenders differently from other prisoners or parolees," *id.*, Plaintiffs' equal protection claim will fail.

In *Dantzler*, the plaintiff, a sex offender, was granted parole conditioned on being placed in a CCC. Although Dantzler was granted parole, he remained incarcerated for at least five years because the PBPP was unable to find a CCC able to accommodate him. Danztler's claim was essentially the same as Plaintiffs' in this case: the "treatment of prisoners convicted of sex

offenses, which differs from treatment of other prisoners with respect to parole, violates the 14th Amendment." *Id.* The court disagreed and granted defendant's motion to dismiss, finding defendant's "interests in providing communities notice about the release of convicted sex offenders and in providing paroled sex offenders with post-incarceration treatment" satisfied the rational basis test. *Id.*

In this case, Plaintiffs allege that sex offenders, "unlike other paroled offenders, are barred from CCC placement consideration until they reach an arbitrary DOC imposed period of two years before their maximum sentence date." Compl. ¶ 32. Defendant, however, has a rational basis for treating convicted sex offenders differently than other prisoners or parolees. First, Defendant's policy is based on public safety concerns, in that delaying convicted sex offenders' eligibility for halfway house placement prevents sex offenders from entering communities in large numbers. Moreover, Defendant asserts that, due to the logistical difficulties of placing sex offenders in halfway houses, including registration pursuant to Megan's Law, delaying their eligibility for CCC/CCF placement serves the legitimate interest of avoiding "clogging the system and leaving less room in CCCs for those who have a greater likelihood of more rapid community placement." Br. in Supp. of Mot. to Dismiss 7-8. Because Defendant's treatment of sex offenders satisfies the Equal Protection Clause "rational basis" test, Plaintiffs' claim will be dismissed.

For the reasons set forth above, Defendant's motion to dismiss the Complaint will be granted. Although Plaintiffs do not seek leave to amend their Complaint, the Court notes that any attempt of Plaintiffs to cure their equal protection claim would be futile, as Defendant has a rational basis for the policy at issue. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer

amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."). Plaintiffs' Complaint will therefore be dismissed with prejudice.

An appropriate Order follows.


BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.